GERBER, J.
The insureds appeal the circuit court’s final summary judgment in favor of the insurer. The insureds primarily argue that their untimely pre-suit notice of the alleged loss and untimely pre-suit submission of a sworn proof of loss did not preclude them from recovery under the policy. We disagree. We conclude that the insureds’ untimely pre-suit notice of the alleged loss and untimely pre-suit submission of a sworn proof of loss created a presumption of prejudice to the insurer, which the insureds failed to rebut, thereby precluding the insureds from recovery under the policy. Thus, we affirm.
From the insurer’s motion for summary judgment, the insureds’ response, and the insurer’s reply, we discern the following undisputed material facts. In October, 2005, Hurricane Wilma allegedly damaged the insureds’ roof. The insureds’ policy provides that “[ajfter a loss ... [the insureds] shall ... give immediate notice to [the insurer]” and shall “submit to [the insurer], within 60 days after the loss, [the insureds’] signed, sworn proof of loss.” The policy further provides: “No action shall be brought unless there has been compliance with the policy provisions.” The insureds did not give immediate notice of the alleged loss to the insurer and did *951 not submit to the insurer a sworn proof of loss within 60 days after the alleged loss.
Instead, more than three years later, in February, 2009, the insureds filed a claim for the alleged loss. They stated that an inspection performed earlier that month made them aware of roof damage allegedly resulting from Hurricane Wilma.
The insurer investigated the claim. The investigation included an inspection of the roof. In May, 2009, the insurer sent the insureds a letter stating, in pertinent part:
... [The inspector] did not find any ... physical loss to the roof which could be directly attributed to Hurricane Wilma.
Furthermore ... our ability to independently determine the cause and date of loss for the roof damage claim has been compromised. Specifically, your failure to provide immediate notice of the loss, your failure to display the damage, and failure to maintain complete and accurate records of the repairs completed, has compromised our ability to arrive at a fair coverage determination ....
The letter then referred the insureds to the policy provisions stating, among other things, that “[a]fter a loss ... [the insureds] shall ... give immediate notice to [the insurer]” and “submit to [the insurer], within 60 days after the loss, [the insureds’] signed, sworn proof of loss.”
In December, 2009, the insureds submitted a sworn proof of loss to the insurer. Later that month, the insureds sued the insurer for breaching the policy by failing to pay the claim.
The insurer’s motion for summary judgment argued that the insureds materially breached their duties under the policy by, among other things, not giving immediate notice of the alleged loss and not submitting a sworn proof of loss within 60 days after the loss. According to the insurer, the insureds’ material breach of their duties under the policy relieved the insurer of its duties under the policy.
The insureds’ response to the motion argued that they complied with the policy by giving immediate notice of the loss as soon as they discovered the loss in February, 2009. The insureds conceded that they did not submit the sworn proof of loss within 60 days after they discovered the loss. However, the insureds argued that their failure to submit a sworn proof of loss within 60 days after they discovered the loss did not prejudice the insurer and therefore was not a ground for denying coverage. According to the insureds, conditions did not change between the discovery of the loss and their submission of the sworn proof of loss.
The insureds further argued that even if the delayed discovery rule were not applicable, the policy provisions requiring them to give immediate notice of the loss and submit a sworn proof of loss within 60 days of the loss were cooperation clauses and, therefore, the issue of whether their untimely notice and untimely submission of a sworn proof of loss materially breached those provisions is a jury question. See Schnagel v. State Farm Mut. Auto. Ins. Co., 843 So.2d 1087, 1038 (Fla. 4th DCA 2003) (“Where ... an insured cooperates to some degree [with a cooperation clause], the issue of whether there has been a material breach of the insurance contract is one for a jury — not the trial judge.”) (citation omitted). The insureds supported this argument with their own affidavit. In the affidavit, the insureds claimed that any breach by them of the policy provisions was not material because they did not make any repairs to the roof following Hurricane Wilma, and no comparable windstorm events occurred after Hurricane Wilma. Thus, the insureds claimed, *952 “While the damage to the roof may have increased since 2005, the work necessary to repair the damage has not changed. The roof needs to be replaced, whether done in 2005 or 2009.”
In reply, the insurer argued that the insureds’ contention of having complied with the policy by reporting the loss “upon its discovery” improperly attempted to rewrite the policy. The insurer further argued that the policy provisions which the insureds breached were conditions precedent to suit, and not cooperation clauses, and therefore the insurer need not show prejudice. In support of the latter argument, the insurer cited Goldman v. State Farm, Fire General Insurance Co., 660 So.2d 300, 303-04 (Fla. 4th DCA 1995), for the proposition that “an insurer need not show prejudice when the insured breaches a condition precedent to suit.... On the other hand, if the provision is a cooperation clause, the burden would be on the insurer to demonstrate substantial prejudice before a breach would preclude recovery under the policy.” (citations and footnote omitted).
After a hearing, the circuit court entered a one-sentence order stating that the insurer’s motion was “Granted. Goldman v. State Farm, 660 So.2d 300 (Fla. 4th DCA 1995).” The court then entered a final judgment in favor of the insurer.
This appeal followed. Our review is de novo. See Chandler v. Geico Indem. Co., 78 So.3d 1293, 1296 (Fla.2011) (when the issue on appeal stems from the trial court’s ruling on summary judgment based upon the interpretation of an insurance contract, the appellate court’s standard of review is de novo) (citations omitted).
We agree with the insurer that the policy provisions requiring the insureds to give immediate notice of the loss and submit a sworn proof of loss within 60 days of the loss were conditions precedent to suit, and not cooperation clauses, and that the delayed discovery rule does not apply. An insurance contract “must be construed in accordance with the plain language.” Id. at 1300 (citation and internal quotations omitted). Here, the policy’s plain language states that “[ajfter a loss ... [the insureds] shall ... give immediate notice to [the insurer]” and shall “submit to [the insurer], within 60 days after the loss, [the insureds’] signed, sworn proof of loss.” The policy further provides: “No action shall be brought unless there has been compliance with the policy provisions.” Such language causes the giving of immediate notice of the loss and the submission of a sworn proof of loss within 60 days of the loss to become conditions precedent to suit. See Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985) (“A notice of accident in most insurance policies is a condition precedent to a claim. It was so designated in the policy in this case.... A failure to cooperate clause, on the other hand ... is a condition subsequent. ...”); Starling v. Allstate Floridian Ins. Co., 956 So.2d 511, 513-14 (Fla. 5th DCA 2007) (the insured’s obligation under an insurance policy to provide the insurer with a sworn proof of loss within 60 days after loss constituted a condition precedent to suit where the policy stated: “No suit or action may be brought against us unless there has been full compliance with all policy terms.”).
Despite the fact that a notice of loss and a sworn proof of loss are conditions precedent to suit, however, our supreme court long has held that “[s]uch a condition can be avoided by a party alleging and showing that the insurance carrier was not prejudiced by noncompliance with the condition.” Bankers, 475 So.2d at 1218. In other words, “[i]f the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be *953 rebutted by a showing that the insurer has not been prejudiced by the lack of notice.” Id. (citations omitted).
Applying that principle to this case, the insureds’ untimely pre-suit notice of the alleged loss and untimely pre-suit submission of the sworn proof of loss is presumed to have prejudiced the insurer. Thus, the burden shifted to the insureds to show that the insurer was not prejudiced by their untimely pre-suit notice of the alleged loss and the untimely pre-suit submission of the sworn proof of loss. This burden shifting is consistent with the burden shifting which occurs on a motion for summary judgment when the movant has met the initial burden of demonstrating the nonexistence of any genuine issue of material fact. See Landers v. Milton, 370 So.2d 368, 370 (Fla.1979) (“A movant for summary judgment has the initial burden of demonstrating the nonexistence of any genuine issue of material fact. But once he tenders competent evidence to support his motion, the opposing party must come forward with counterevidenee sufficient to reveal a genuine issue.”).
Here, the insureds failed to come forward with counterevidence sufficient to reveal a genuine issue of material fact as to whether the insurer was prejudiced by the insureds’ untimely pre-suit notice of the alleged loss and untimely pre-suit submission of the sworn proof of loss. The insureds’ evidence consisted of their own affidavit, attached to which were unsworn copies of reports from the engineers who inspected the insureds’ roof. In the affidavit, the insureds claimed that any breach by them of the policy provisions was not material because they did not make any repairs to the roof following Hurricane Wilma, and no comparable windstorm events occurred after Hurricane Wilma. Thus, the insureds claimed, “While the damage to the roof may have increased since 2005, the work necessary to repair the damage has not changed. The roof needs to be replaced, whether done in 2005 or 2009.” At best, the insureds’ affidavit merely adopts unsworn statements that Hurricane Wilma damaged their roof and that their roof needs to be replaced as a result. Their affidavit does not present sufficient counterevidence to overcome the insurer’s presumption of prejudice. Therefore, the insureds properly suffered an adverse final judgment. Compare Bankers, 475 So.2d at 1218 (“[The insured] should have shown that [the insurer] suffered no prejudice from this unreasonable delay. [The insured] failed to present any evidence on this issue and properly suffered an adverse final judgment.”), with Stark v. State Farm Fla. Ins. Co., 95 So.3d 285 (Fla. 4th DCA 2012) (reversing summary judgment for the insurer where, among other things, the insurer’s investigator allegedly told the insureds’ public adjuster “that there appeared to be storm damage to the [insureds’] roof.”).
We have considered the insureds’ other arguments and conclude without further discussion that those arguments lack merit.

Affirmed.

[1]

TAYLOR and LEVINE, JJ., concur.

. In reaching this decision, we clarify our opinion in Kroener v. Florida Insurance Guaranty Ass’n, 63 So.3d 914 (Fla. 4th DCA 2011). There, in affirming a summary judgment for the insurer, we held: “[W]e agree with the trial court's ruling that, as a matter of law, *954 notice to the insurer of a claim of loss more than two years and two months after the loss occurred was not prompt notice; the untimely reporting of the loss violated the insurance policy and was sufficient to bar the claim.” Id. at 916 (citation omitted). That holding was based upon a record similar to this case, where the insurer argued that it was prejudiced by the insureds’ untimely pre-suit notice of the alleged loss, and the insureds did not come forward with counterevidence sufficient to reveal a genuine issue as to whether the insurer was prejudiced. Kroener should not be interpreted as having deviated from the prejudice analysis described in Bankers.